1

2

3

4                                                                2019 SEP -6 AM 11: 22

5                                                                FILED

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 19CR00511-GW

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [18 U.S.C. § 1349: Conspiracy to
                                        Commit Health Care Fraud]
13   IVAN SEMERDJIEV,

14              Defendant.

15

16        The Acting United States Attorney charges:

17                     [18 U.S.C. § 1349]

18   A.   INTRODUCTORY ALLEGATIONS

19        At all times relevant to this Information:

20   Defendant SEMERDJIEV and His Co-Conspirators

21        1.   Philips San Pedro Chiropractic ("Philips Chiropractic"),

22   which was known until approximately June 2017 as Synergy Healthcare

23   and Wellness Center, was a medical clinic operating in the Central

24   District of California that offered its patients chiropractic

25   services, massage therapy, and other forms of physical therapy.

26        2.   Defendant IVAN SEMERDJIEV ("defendant SEMERDJIEV") was a

27   resident of Irvine, California, within the Central District of

28   California.  Defendant SEMERDJIEV was a licensed chiropractor who

1  began working at Philips Chiropractic in or around October 2017 and
2  provided chiropractic services to Philips Chiropractic patients.

3       3.   Chiropractor 1 was a licensed chiropractor and the owner of
4  Philips Chiropractic.

5       4.   Julian Williams worked as a personal athletic trainer at
6  Philips Chiropractic and provided personal training services to
7  Philips Chiropractic patients.  Williams was not licensed as a
8  chiropractor, physical therapist, or physical therapist assistant,
9  and did not hold any licenses related to providing medical treatment.

10      The ILWU-PMA Plan

11      5.   The International Longshore and Warehouse Union, formerly
12  known as the International Longshoremen's and Warehousemen's Union
13  ("ILWU"), together with various ILWU locals in different port
14  locations, represented dock workers at ports on the West Coast of the
15  United States, including at the ports of Los Angeles and Long Beach
16  within the Central District of California.

17      6.   The Pacific Maritime Association ("PMA") represented member
18  organizations involved in the shipping industry and arranged on their
19  behalf for the hiring of dock workers at ports on the West Coast of
20  the United States, including at the ports of Los Angeles and Long
21  Beach within the Central District of California.

22      7.   The International Longshoremen's and Warehousemen's Union –
23  Pacific Maritime Association Welfare Plan (the "ILWU-PMA Welfare
24  Plan") was a benefit plan, established by agreement between the ILWU
25  and PMA and affecting commerce, that provided a variety of benefits,
26  including health care benefits, to eligible active and retired ILWU
27  members and their qualified dependents and survivors.  Eligible
28  recipients of health care benefits under the ILWU-PMA Welfare Plan

had an annual choice to have those benefits provided through either a Health Maintenance Organization or a self-funded program that, effective July 1, 2000, was the ILWU-PMA Welfare Plan Self Funded Programs Coastwise Indemnity Plan (the "Plan"). The Plan was funded almost entirely by the PMA.

8. The Plan reimbursed providers of medical services, including physicians, chiropractors, and medical clinics (collectively, "providers"), that treated patients covered by the Plan ("Plan members"). Each Plan member had a unique identification number.

9. The Plan required providers to submit claim forms in order to receive reimbursement for medical services provided to Plan members. Among other information, providers were required to include in the claim forms: (i) the Plan member's name and ID Number; (ii) the type of service provided; (iii) the date the service was provided; (iv) the charge for the service; (v) the diagnosis; and (vi) the provider's name and/or identification number.

10. The Plan had a Preferred Provider Organization ("PPO"). For medical services provided by providers within the PPO, the Plan generally covered 100% of the PPO charge with no deductible and without requiring Plan members receiving the services to contribute any copay amount or incur any other out-of-pocket costs.

11. The Plan provided coverage for chiropractic services and had a PPO for chiropractic services, which, effective as of July 1, 2009, was the Chiropractic Health Plan of California ("CHPC"). For chiropractic services provided by a CHPC provider, the Plan covered 100% of CHPC charges, with no out-of-pocket cost to the Plan member receiving the chiropractic services. The chiropractic services

3

covered by the Plan included office visits, up to a maximum of 40
related to any particular "diagnosis," and up to a maximum of 18
related to "symptoms" in the absence of a "diagnosis."  The Plan
provided coverage for these services both to Plan members and to the
spouses and dependent children of Plan members.

12.  The CHPC had a Code of Conduct that was developed to
address specific areas of concern relating to the Plan's chiropractic
benefit.  Among other things, the Code of Conduct required treatments
provided to a Plan member to be medically necessary and only to
address the specific condition as diagnosed and documented in the
Plan member's patient's history.

B.   THE OBJECT OF THE CONSPIRACY

13.  Beginning in or about October 2017 and continuing until at
least in or about October 2018, in Los Angeles County, within the
Central District of California, and elsewhere, defendant SEMERDJIEV,
together with Chiropractor 1 and Williams, and others known and
unknown to the Acting United States Attorney, knowingly conspired to
commit the following offense: health care fraud, in violation of
Title 18, United States Code, Section 1347.

C.   MANNER AND MEANS OF THE CONSPIRACY

14.  The object of the conspiracy was carried out, and to be
carried out, in substance, as follows:

a.   As defendant SEMERDJIEV then knew, Chiropractor 1
would induce Plan members to visit Philips Chiropractic by offering
to pay them cash for visiting the clinic.  Defendant SEMERDJIEV,
Chiropractor 1, and other co-conspirators would document which Plan
members were paid for their visits by placing marks on the Plan
members' charts.

1          b.    Chiropractor 1 would offer monetary incentives to

2    defendant SEMERDJIEV, Williams, other employees of Philips

3    Chiropractic, and patients of Philips Chiropractic to recruit

4    additional Plan members to visit Philips Chiropractic.

5          c.    Once Plan members visited Philips Chiropractic,

6    Chiropractor 1 would bill, and cause employees of Philips

7    Chiropractic to bill, the Plan for services not rendered, services

8    that were not medically necessary, and chiropractic and physical

9    therapy services that were performed by Williams, who was not

10   licensed or otherwise qualified to be performing those services.

11         d.    At Chiropractor 1's instruction, Philips Chiropractic

12   maintained sign-in sheets that listed the dates that Plan members

13   purportedly received services from Philips Chiropractic and from whom

14   at the clinic, and which Plan members were supposed to sign when they

15   visited Philips Chiropractic and received services.  Defendant

16   SEMERDJIEV, Chiropractor 1, and Williams would create false entries

17   in the names of Plan members and Plan members' relatives who had not

18   visited Philips Chiropractic on the days listed.

19         e.    Defendant SEMERDJIEV, Chiropractor 1, and other co-

20   conspirators at Philips Chiropractic would use and cause to be used

21   the false sign-in sheets to create Subjective, Objective, Assessment,

22   and Plan ("SOAP") notes that reflected the false information on the

23   sign-in sheets.  Defendant SEMERDJIEV would create SOAP notes for

24   each Plan member or Plan member relative listed on the sign-in sheets

25   regardless of whether the Plan member or Plan member relative

26   actually visited Philips Chiropractic on the date listed, with

27   falsified information about that Plan member or Plan member relative.

28   These SOAP notes included material false and misleading statements

and omissions that the patients had received particular chiropractic and/or physical therapy services on the dates listed, when, in fact, as defendant SEMERDJIEV then knew, they had not received those services, and on some occasions, had not even visited Philips Chiropractic on that day.

f.   Defendant SEMERDJIEV, Chiropractor 1, and other co-conspirators would then use and cause to be used these false SOAP notes to submit to the Plan fraudulent claims for reimbursement for chiropractic and physical therapy services purportedly provided to the Plan members and Plan member relatives listed on the sign-in sheets on those dates.  These claims would list defendant SEMERDJIEV as the provider who had provided the services listed in the claims. As defendant SEMERDJIEV then knew, the claims included material false and misleading statements and omissions that the patients had received medically necessary chiropractic and/or physical therapy services from defendant SEMERDJIEV; in fact, they had not received those services and, on some occasions, had not even visited Philips Chiropractic on that day.

g.   Chiropractor 1 would cause, and direct others to cause, the reimbursements on those fraudulent claims to be deposited into the Philips Chiropractic bank account that he controlled.  From this account, Chiropractor 1 would write, and cause others to write, checks transferring funds to himself and to Williams and defendant SEMERDJIEV as payment for their roles in the conspiracy.

15.  Between in or about October 2017 and in or about October 2018, Philips Chiropractic submitted approximately $2,149,119 in claims to the ILWU-PMA Plan, for which the ILWU-PMA Plan paid approximately $924,707.

D.    OVERT ACTS

16.    In furtherance of the conspiracy and to accomplish its object, defendant SEMERDJIEV, together with Chiropractor 1 and Williams, and others known and unknown to the Acting United States Attorney, committed and willfully caused others to commit, the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1:    On or about July 28, 2018, defendant SEMERDJIEV completed SOAP notes at the direction of Chiropractor 1 for services purportedly rendered to L.T. on that date, knowing that L.T. did not receive any such services from Philips Chiropractic on that date.

Overt Act No. 2:    On or about July 31, 2018, defendant SEMERDJIEV completed SOAP notes at the direction of Chiropractor 1 for services purportedly rendered to M.C. on that date, knowing that M.C. did not receive any such services from Philips Chiropractic on that date.

//
//
//
//
//
//
//
//
//
//
//

1     <u>Overt Act No. 3:</u>     On or about August 2, 2018, defendant

2    SEMERDJIEV completed SOAP notes at the direction of Chiropractor 1

3    for services purportedly rendered to J.E. on that date, knowing that

4    J.E. did not receive any such services from Philips Chiropractic on

5    that date.

6

7                                        TRACY L. WILKISON
                                         Attorney for the United States
8                                        Acting Under Authority Conferred
                                         by 28 U.S.C. § 515
9

10                                       *Brandon Fox*

11                                       BRANDON D. FOX
                                         Assistant United States Attorney
12                                       Chief, Criminal Division

13                                       RANEE A. KATZENSTEIN
                                         Assistant United States Attorney
14                                       Chief, Major Frauds Section

15                                       KRISTEN A. WILLIAMS
                                         Assistant United States Attorney
16                                       Deputy Chief, Major Frauds Section

17                                       ALEXANDER C.K. WYMAN
                                         Assistant United States Attorney
18                                       Major Frauds Section

19

20

21

22

23

24

25

26

27

28